IN UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDSEY WHITE,

            Plaintiff,

v.

EVERETT FINANCIAL, INC. D/B/A
SUPREME LENDING NMLS #2129
and ARISTIDES "ARI" PRIAKOS,
individually,

            Defendants.

Case No. 8:22-cv-1762

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff LINDSEY WHITE ("Plaintiff" or "White") sues Defendants,
EVERETT FINANCIAL, INC. D/B/A SUPREME LENDING NMLS #2129
("Supreme Lending") and ARISTIDES "ARI" PRIAKOS ("Priakos"), and states as
follows:

### CAUSES OF ACTION

1.      This is an action brought under the Fair Labor Standards Act of 1938, as
amended; 29 U.S.C. § 201, *et. seq.* (FLSA); The Florida Private Whistleblower Act, Fla.
Stat. § 448.102 (FPWA); Article X, Section 24, Florida Constitution; the Americans
with Disabilities Act, 42 U.S.C. 12101, et seq., as amended (ADA); the Florida Civil
Rights Act, Ch. 760 Florida Statutes (FCRA); and Florida common law for fraud and
misrepresentations, seeking among other things the equitable remedies of rescission or
reformation of an employment contract.

## PARTIES

2.      Plaintiff is an individual who currently resides in Pinellas County, Florida. At all material times for the purposes of this Complaint, Plaintiff was domiciled in Pinellas County, Florida.

3.      Defendant Everett Financial, Inc. d/b/a Supreme Lending NMLS #2129 ("Supreme Lending") is a full-service, nationwide mortgage lender with a focus on residential mortgages with its principal place of business located in Dallas, Dallas County, Texas.

4.      Defendant Aristides "Ari" Priakos ("Priakos") is a natural person domiciled in Pinellas County, Florida working as a Branch Manager for Supreme Lending. Priakos was also the primary individual working for Supreme Lending who controlled the day-to-day operations of Plaintiff's branch at which she was employed with Supreme Lending and who was involved in supervising Plaintiff and the payment of employees at that branch, including Plaintiff.

## JURISDICTION AND VENUE

5.      Subject matter Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 29 U.S.C. §216 (b) because this action involves a federal question under the Fair Labor Standards Act.  Jurisdiction over the state law claim set forth herein is proper pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

6.      Personal jurisdiction and venue are proper in the United States District Court for the Middle District of Florida because at all times material, Defendants conducted business in, and significant events giving rise to Plaintiff's claims occurred

within the Florida counties comprising the U.S. District Court, Middle District of Florida. Moreover, both Defendants maintained continuous and systematic contacts with the State of Florida, including Pinellas County. Both Defendants purposefully availed themselves of this forum by, among other things, contracting directly with Plaintiff while she was located in this forum and by marketing to and contracting with consumers, suppliers, vendors, and others in the forum in connection with their mortgage lending business.

7.     Venue is proper in the Tampa Division under Local Rule 1.02(b)(5) since the action accrued in Pinellas County, Florida over which the Tampa Division has jurisdiction.

8.     With the exception of Plaintiff's ADA and FCRA claims, all conditions precedent to this lawsuit have been met, performed, excused, waive, repudiated, or are futile. Contemporaneously with the filing of this Complaint, Plaintiff has filed charges of discrimination concerning her ADA and FCRA claims with the Equal Employment Opportunity Commission (EEOC), Florida Commission on Human Relations (FCHR), and the Pinellas County Office of Human Rights (PCOHR) and reserves the right to amend the Complaint to include the ADA and FCRA claims arising under the same nucleus of operative facts as the other claims in this action upon the completion of the processes with those agencies one statutory conditions precedent have been met.

## FLSA COVERAGE

9.     Defendant Supreme Lending is a nationwide mortgage lender.

10.     Plaintiff was formerly employed by Defendant Supreme Lending as a Loan Officer from April 29, 2022 to June 22, 2022

11.     At all times material hereto, Defendant Supreme Lending was "an enterprise engaged in commerce" and therefore is a covered employer subject to the wage and hour requirements of the FLSA including the payment of minimum wages and overtime compensation to non-exempt employees.

12.     At all times relevant, Defendant Supreme Lending had annual gross revenues of at least $500,000.00.

13.     At all times relevant, Defendant Supreme Lending employed two or more individuals who, in the course and scope of their employment, handled items that were manufactured outside of Florida and moved through interstate commerce.

14.     At all times relevant, Defendant Supreme Lending employed two or more individuals who routinely handled tools and equipment which were manufactured outside of Florida and moved through interstate commerce.

15.     By virtue of being a covered employer under the FLSA, Defendant Supreme Lending was at all times relevant a covered employer under Article X, Section 24, Florida Constitution (Art. X. Sec. 24).

16.     At all times material hereto, Defendant Supreme Lending was also an "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203.

17.     Defendant Supreme Lending managed, oversaw, and operated as a business enterprise within the meaning of 29 U.S.C. § 203 (s) (1) of the FLSA.

18.     Defendants exercised complete dominion and control over employee wages, hours, and working conditions including those of Plaintiff.

19.     At all times material hereto, Defendant Priakos, in his individual capacity, was an employer within the meaning of 29 U.S.C. § 203(d) of the FLSA subject to liability for violations thereof.

20.     Defendant Priakos managed, oversaw, and operated Supreme Lending's Florida branch as a business enterprise within the meaning of 29 U.S.C. § 203 (s) (1) of the FLSA.

21.     Defendant Priakos, in conjunction with Supreme Lending, devised and implemented pay policies of Supreme Lending applicable to Plaintiff.

22.     By virtue of being an employer under the FLSA, Defendant Supreme Lending was an employer under Art. X, Sec. 24 and subject to liability for violations thereof.

23.     At all times material hereto, Plaintiff was an FLSA non-exempt employee of Defendants.

24.     Defendants promised to pay Plaintiff the greater of the applicable state minimum wage or the federal minimum wage along with overtime compensation at a rate for one-and-a-half times Plaintiff's regular rate of pay for any hours worked over forty (40) in a week as well as commission on mortgage sales.

25.     Defendants were required under the FLSA to pay Plaintiff at least the applicable minimum wage for each hour worked in a workweek.

26.     Defendants were also required under the FLSA to pay Plaintiff one-and-one-half times her effective hourly rate for each hour worked over forty in a workweek.

27.     Plaintiff held licenses in eighteen different states for her profession, and as part of Plaintiff's job duties with her prior employer as well as those with Supreme Lending, Plaintiff routinely worked in interstate commerce directly engaged in interstate marketing, sales, and contracting concerning residential mortgages.

28.     In her employment with Defendants, Plaintiff is individually covered under the FLSA because she was individually engaged in interstate commerce.

## GENERAL ALLEGATIONS

29.     Prior to agreeing to work for Defendants, Plaintiff was gainfully employed in mortgage sales for a third-party, earning annual compensation of approximately $200,000 to $250,000. The majority of Plaintiff's compensation with this prior employer was incentive pay based on the dollar volume of originated mortgage sales.

30.     Plaintiff was recognized as a top producer and loan originator, with Defendants describing Plaintiff as a "great producer," "the Queen of the re-fi kingdom," and a "superstar."

31.     Beginning in April 2022, Defendants began efforts to recruit Plaintiff to perform mortgage sales for Supreme Lending.

32.     Defendants, through conversations and documents exchanged with Plaintiff, became aware of her compensation, benefits, and other terms of employment with her then-current employer for the purposes of recruiting and generating a

competitive offer of employment to induce Plaintiff to leave her then-current job and begin working with Defendants.

33.     Over the course of Defendants' recruiting efforts, Defendants placed themselves in a position of confidence with Plaintiff. For example, on or around April 28, 2022, Defendants gave legal advice to Plaintiff from Supreme Lending's general counsel concerning written agreements with Plaintiff's then-current employer.

34.     Defendants recognized that, for Plaintiff to reach production numbers on par with or exceeding those from her then-current employer, that Defendants would need to invest in a very specific type of inbound, exclusive, direct-mail marketing to obtain the quantity and quality of consumer leads required for her sales process. The scope and details of Defendants' ability to provide Plaintiff with these types of marketing resources were covered heavily over the course of Defendants' recruiting discussions with Plaintiff.

35.     In discussions that took place from April 22, 2022 until around April 29, 2022, Plaintiff disclosed to Defendants, among other facts, the existence of disability conditions, their limitations on major life activities, and accommodations that would be needed for her to perform the essential functions of the job. Specifically, Plaintiff explained that she has MS along with other lifelong, incurable auto-immune diseases (Behcet's disease, celiac disease), as well as other debilitating medical issues regarding broken vertebrae in her back and ongoing surgical issues that were intertwined regarding limitations on Plaintiff's life activities. Plaintiff explained these conditions were being actively treated and that she needed to have time to attend regular medical

appointment for, among other things, IV treatments as well as intermittent leave for unforeseeable flare-ups of the conditions. The conditions described herein adversely affected major life activities such as sitting and standing for prolonged periods of time, sleeping, focusing, and thinking, as well as the attendant need for regular medical treatment, including specialized treatment with specific providers in Florida where Plaintiff resides. During this conversation, it was clear that Plaintiff needed to continue residing in Florida to continue her treatment with medical providers there as well as to rely on individuals nearby who served as necessary caregivers during certain treatments or periods of incapacity. The necessity of working remote was further disclosed.

36.   In discussions that took place in Florida on or around April 28, 2022, Defendants, specifically through Priakos, made numerous false promises to Plaintiff to induce her to leave her then-current job, begin employment with Defendants, and sign the Hire Paperwork with Supreme Lending, including:

a.   That Plaintiff would receive as many leads as she wanted through Velocify and Lending Tree, that they would be Plaintiff's leads, and "not be worked by anybody else that I can promise you";

b.   That Defendants would have no problem spending as much money as was needed for direct-mail marketing per Plaintiff's specifications and that Priakos had authority to make spending decisions of this kind;

c.     That Plaintiff would have as many inbound, exclusive, direct-mail customer leads as she wanted;

d.     That Plaintiff would easily close $40m - $50m in loans annually;

e.     That Plaintiff would earn annual compensation in the $400,000s, more than the $200,000 - $250,000 she was earning in her then current job; and

f.     That Plaintiff would be permitted to work remote from her home in Florida, would never miss an IV treatment or medical appointment, and that Defendants would make sure Plaintiff was taken care of as to her medical needs.

37.     In reliance of the above promises, on April 29, 2022, Plaintiff was induced electronically sign a composite document containing a "Compensation Agreement – Loan Officer," "Loan Officer Agreement," a "Confidentiality and Non-Solicitation Agreement," and other new-hire paperwork attached hereto as **Exhibit A** ("Hire Paperwork").

38.     In the Hire Paperwork, Defendants falsely promised that they would pay Plaintiff, at a minimum, compensation the greater of the applicable state minimum wage or federal minimum wage as well as an overtime premium of one-and-a-half times Plaintiff's regular rate of pay for any hours worked over forty in a week, to be paid on the 15th and the last day of each month. Priakos affirmed this payment schedule in text messages to Plaintiff.

39.     Defendants also promised to pay Plaintiff a sign-on bonus in the gross amount of $27,000.

40.     Shortly after Plaintiff signed the Hire Paperwork, Defendants continued to affirm their prior promises about marketing, including other assurances from Priakos on behalf of both Defendants that "You're still going to make more money with me and Supreme" than at Plaintiff's prior employer.

41.     Plaintiff subsequently learned that the representations made by Defendants as described in Paragraph 36 above were knowingly false when made. Specifically, Priakos did not have the authority to make the representations he made concerning the marketing budget and the types of marketing the Defendants would be performing for Plaintiff's and Defendants' benefit; Priakos' department's profit and loss statement did not support the type of marketing budget that was promised; and Priakos did not receive approval from his supervisors concerning the budget. Accordingly, Defendants did not provide the marketing resources that were promised to Plaintiff as an inducement for her to leave her prior position and begin working for Defendants. Defendants knew or should have known that the promised marketing budget and plan would not be available at that branch and that Plaintiff would need to relocate to another branch out-of-state to employ such marketing measures, thereby rendering false the promises that Plaintiff would be never miss a medical appointment, would be able to work remote, and would be able to continue her treatment and care in Florida as part of the disability accommodations promised.

42.    As a result of Defendants' false promises described above, Plaintiff commenced work in the position with outbound, cold-call, non-exclusive Lending Tree leads instead of leads generating by the marketing plan that was promised, a development that resulted in a material and adverse change in the working conditions that would cause her to earn much less compensation than was promised due to having to work inferior and fewer leads as well as having to compete with many other lenders calling the same leads.

43.    Plaintiff moreover discover that Defendants were violating laws concerning origination of mortgages to consumers. Defendants, and specifically Priakos on behalf of Supreme Lending, engaged in a practice of baiting and switching consumers with verbally promised, unrealistic, and impossible interest rates that Defendants would unilaterally raise later in the transaction process.

44.    Upon admitting an example of the above-described practice, Priakos said he would personally provide restitution to the consumer at issue by paying the $12,000 difference out of his pocket. However, Priakos never fulfilled this promise.

45.    The above-described bait-and-switch practice of Defendants struck Plaintiff as unacceptable, unprofessional, and illegal, in addition to creating a liability risk for Plaintiff concerning her ethical and legal obligations as a licensed professional.

46.    Plaintiff also learned that Priakos had transferred Plaintiff's referral to another loan officer at Supreme Lending who proceeded to quote unrealistically low interest rates to the consumer in violation of prior promises made to Plaintiff that her leads would be hers and not receive competition from other loan officers with the

11

CALCIANO PIERRO, PLLC

company. Priakos proceeded to involve himself in this transaction in a manner that caused the customer to feel belittled and lose confidence in doing business with Plaintiff or Supreme Lending altogether—the consumer complained in a writing to Plaintiff that accompanied the consumer's formal withdrawal of application for mortgage.

47.     Plaintiff complained to Supreme Lending's Human Resources department concerning the numerous issues described above, including the illegal bait-and-switch practices regarding consumers, Defendants' false promises made to Plaintiff regarding, among other things, marketing and the generation of leads for her sales process, the attendant effects on her ability to earn compensation, and related matters.

48.     In response to Plaintiff's complaints to Human Resources, that department responded stating that they "really want to help [Plaintiff] and see what we can do. I'm sorry this is happening to you." Human Resources gave Plaintiff a "code phrase" she could use during a staff meeting to be able to leave the meeting and have a private conversation directly with Ryan Baxter, Supreme Lending's Head of Recruiting, about the issues and a proposed resolution.

49.     During the conference with Baxter on June 17, Plaintiff and Baxter discussed proposed resolutions such as Plaintiff working in either the Dallas, TX or Maryland branches of the company that were capable of performing the types of exclusive, direct-mail marketing that were promised to Plaintiff. Supreme Lending knew that, in order to transfer Plaintiff to a branch that could honor what she was

promised, Plaintiff would need to be able to work remote at least 50% of the time to be able to continue her medical treatments with local specialists and family caregivers located near her residence in Pinellas County, Florida, which included but was not limited to regular IV treatments with Plaintiff's doctors where she resided in Florida.

50.     Both the Maryland and Dallas offices of Supreme Lending refused to allow Plaintiff to work remotely unless she licensed her home residence for the type of service provided, which the company claimed was prohibitively expensive. As part of the interactive process with Supreme Lending, Plaintiff offered to visit the Maryland or Dallas office 50% of the time and absorb the costs of travel and licensing her home residence herself. However, after offering this, Supreme Lending backtracked on its earlier representations about the undue hardship of financial costs and stated that Plaintiff would need to work in-person at the out-of-Florida branch 100% of the time due to each branch manager's preference, which was not a medically viable option for Plaintiff given her disability issues and treatment needs. Supreme Lending denied Plaintiff's request for accommodation concerning working remotely at an out-of-Florida branch office that would honor the terms that were promised to her concerning marketing efforts. Plaintiff and Supreme Lending also discussed transfer to a different position in the company as an accommodation, which was denied.

51.     On or around June 20, 2022, Plaintiff was told by Supreme Lending, via Baxter, that there were no other roles and no other branches to which she could transfer. Plaintiff was further told there was nothing else she could do unless she wanted to continue working under Priakos. Plaintiff explained that this was not a

feasible option because Priakos engaged in fraudulent, deceptive, and unfair business practices with consumers and his department did not have the marketing resources that were promised to Plaintiff upon hiring, along with other issues that Plaintiff subsequently conveyed in writing to Human Resources. The conversation left off with Baxter stating that, under the circumstances, Supreme Lending and Plaintiff could have a "friendly departure." Plaintiff stated that she did not want to leave the company and that she really hoped Supreme Lending could make the arrangement work; however, Baxter made it seem to Plaintiff that she and Supreme Lending could amicably separate based on Defendants' failure to live up to the promises made and failure to accommodate Plaintiff's disability. Baxter even agreed the following day to provide a positive reference letter if the event the parties separated.

52.     On June 22, 2022, Plaintiff submitted an email Human Resources, Baxter, and Priakos complaining of the following: Defendants' engaging in fraudulent, deceptive, and unfair business practices with consumers; Defendants making knowingly false representations to Plaintiff a in connection with her sales duties along with other failures to honor promises made to her; that the amount of income to her from Defendants was vastly less than what was promised; that Plaintiff has standing to file a lawsuit against Supreme Lending; that Plaintiff would rather not pursue a lawsuit but would instead like to be able to leave the company without having to repay her sign-on bonus; numerous other issues involving Priakos committing fraudulent acts and diverting Plaintiff's referrals to other individuals; Defendants' failure to reasonably accommodate her disability conditions; other issues and examples of the

above-described conduct that Plaintiff offered to provide documentary evidence of on request; and that the situation caused by Defendants has caused Plaintiff extreme stress, economic losses, and reduced employment prospects.

53.   On June 22, 2022, within hours of Plaintiff submitting her email complaint, Plaintiff received an email from Human Resources terminating her employment and demanding repayment of the $27,000 sign-on bonus within ten days.

54.   Also on June 22, 2022, within hours of Plaintiff submitting her email complaint, Plaintiff received a Termination Notice to electronically sign. The Termination Notice cites the Reason for Termination as "Other: Too Long to list. ." and states that Plaintiff is not eligible for rehire because she "is not a team player and is simply 'toxic.' Lindsey did not give the company enough time to help her." It was clear from the circumstances that the information on this form was authored by Priakos in retaliation for complaints made by Plaintiff.

55.   The Termination Notice further stated that Plaintiff would be paid all sums due to her per "agreements [she] signed in connection with [her] employment," but to date Plaintiff has not been paid any compensation—contractual pay, minimum wage, overtime, or otherwise—except the sign-on bonus for which Supreme Lending demanded repayment.

56.   On or around July 22, 2022, Supreme Lending sent Plaintiff a "Demand for Immediate Return of Sign-On Bonus" threatening that it would take legal action against Plaintiff if the bonus was not repaid by July 22, 2022. This demand against Plaintiff was sent by Caleb Wood, the same Assistant General Counsel for Supreme

15

Lending that provided legal advice to Plaintiff regarding separation from her prior employer.

57.     Plaintiff has had to retain the undersigned counsel to bring the instant action and will incur attorney's fees for said representation.

## COUNT I
### *(Failure to Pay Minimum Wages in violation of the FLSA, 29 U.S.C. Section - 206) Against Defendants Supreme Lending and Priakos*

58.     Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations in paragraphs 1 through 57.

59.     The FLSA requires that every covered employer shall pay each of their non-exempt employees the applicable minimum wage. 29 U.S.C. § 206(a).

60.     During the relevant time period, Plaintiff was a non-exempt employee under the FLSA and was therefore entitled to payment of at least the federal minimum wage for each hour worked in a workweek.

61.     Defendants willfully failed to compensate Plaintiff at an effective hourly wage which was at least equal to the federal minimum wage.

62.     Defendants owe Plaintiff her unpaid federal minimum wages plus an additional amount in the way of liquidated damages equal to the unpaid minimum wages.

63.     Defendants did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for unpaid minimum wages plus an equal amount in the way of liquidated

damages, prejudgment interest together with the costs of suit and reasonable attorney's fees (pursuant to § 216(b) of the FLSA), and such other and further relief that the Court deems just and proper.

## COUNT II
### *(Failure to Pay Minimum Wages in violation of Article X, Section 24, Florida Constitution)*

### *Against Defendants Supreme Lending and Priakos*

64.     Plaintiff re-alleges and adopts, as if fully set forth in Count II, the allegations in paragraphs 1 through 63.

65.     Plaintiff was entitled to be paid at least the applicable Florida minimum wage for all hours worked during her employment with Defendants.

66.     For multiple workweeks, Defendants willfully failed to compensate Plaintiff at an effective hourly wage which was at least equal to the Florida minimum wage.

67.     Defendants owe Plaintiff unpaid Florida minimum wages plus an additional amount in the way of liquidated damages equal to the amount of unpaid minimum wages.

68.     Defendants did not make a good faith effort to comply with Art. X, Sec. 24 with respect to their compensation of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for unpaid Florida minimum wages plus an equal amount in the way of liquidated damages, prejudgment interest together with the costs of suit and reasonable

attorney's fees (pursuant to Art. X, Sec. 24), and such other and further relief that the Court deems just and proper.

## COUNT III
### (*Failure to Pay Overtime Wages in violation of the FLSA, 29 U.S.C. Section 207*)
### *Against Defendants Supreme Lending and Priakos*

69.     Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations in paragraphs 1 through 68.

70.     During the relevant time period, Plaintiff was a non-exempt employee under the FLSA and was therefore entitled to overtime pay at time and one-half her regular rate of pay for all hours worked in excess of forty (40) in a workweek.

71.     During the relevant time period, Defendant routinely required Plaintiff to work in excess of forty (40) hours in a workweek

72.     In violation of the FLSA, Defendant willfully failed to pay Plaintiff time and one-half her regular rate of pay for overtime hours worked.

73.     As a direct result of Defendant's violation of the FLSA, Plaintiff has suffered damages in the way of unpaid overtime compensation.

74.     Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

75.     Plaintiff is entitled to recover from Defendant the unpaid overtime compensation, and an additional equal amount as liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

WHEREFORE, Plaintiff demands judgment against Defendant for unpaid overtime compensation, statutory liquidated damages, prejudgment interest together with the costs of suit and reasonable attorney's fees (pursuant to § 216(b) of the FLSA), and such other and further relief that the Court deems just and proper.

### COUNT IV
*(FLSA Retaliation, 29 U.S.C. § 215)*

*Against Defendants Supreme Lending and Priakos*

76.     Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations in paragraphs 1 through 75.

77.     Plaintiff engaged in protected conduct under the FLSA when she complained to Defendants regarding the failure to pay her full wages, including overtime pay.

78.     Defendants responded to Plaintiff's protected conduct by terminating her employment, making disparaging and false statements in her personnel file, and demanding clawback of her sign-on bonus.

79.     Defendants' conduct in this regard amounted to a willful violation of the anti-retaliation provision of the FLSA.

80.     On account of the retaliatory discharge, Plaintiff has incurred lost wages.

81.     The retaliation has also caused Plaintiff emotional pain and suffering for which she is entitled to compensatory damages.

82.     Plaintiff states that reinstatement would be impossible or impracticable such that an award of front pay in lieu of reinstatement would be appropriate.

WHEREFORE, Plaintiff demands judgment against Defendants for back pay, front pay in lieu of reinstatement, liquidated damages, compensatory damages, prejudgment interest, together with the costs of suit and reasonable attorney's fees under the FLSA, and such other and further relief that the Court deems just and proper.

**COUNT V**
*(Florida Private Whistleblower Act Retaliation under Fla. Stat. § 448.102)*

*Against Defendant Supreme Lending*

83.    Plaintiff realleges and adopts, as if fully set forth in Count V, the allegations in paragraphs 1 through 57.

84.    At all relevant times, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of Fla. Stat. § 448.102 ("Private Whistleblower Act).

85.    In her June 22, 2022 email, Plaintiff engaged in protected activity under the Private Whistleblower Act when disclosed actual or suspected violations of a law, rule, or regulation. Moreover, Plaintiff repeatedly had objected to and refused to participate in activities, policies, or practices of Supreme Lending in violation of a law, rule, or regulation, including but not limited to Priakos' practice on behalf of Supreme Lending of baiting and switching consumers with deceptively false information regarding mortgage rates.

86.    As outlined above, Supreme Lending retaliated against Plaintiff when it responded to her Complaint by immediately terminating her employment, making

disparaging and false statements in her personnel file, and demanding clawback of a sign-on bonus.

87.    As a result of Supreme Lending's retaliatory acts, Plaintiff has been damaged.

88.    Defendant's retaliatory conduct was the proximate cause of Plaintiff's injuries, damages, and losses.

89.    Plaintiff states that reinstatement would be impossible or impracticable such that an award of front pay in lieu of reinstatement would be appropriate.

WHEREFORE, Plaintiff demands judgment against Defendant for an injunction restraining continued violation of the Private Whistleblower Act, back pay, front pay in lieu of reinstatement, compensatory damages, prejudgment interest, together with the costs of suit and reasonable attorney's fees under Fla. Stat. § 448.104, and such other and further relief that the Court deems just and proper

## COUNT VI
### *(Fraud)*

### *Against Defendants Supreme Lending and Priakos*

90.    Plaintiff realleges and adopts, as if fully set forth in Count VI, the allegations in paragraphs 1 through 89.

91.    Plaintiff signed the Hire Paperwork attached as **Exhibit A** in connection with her employment at Supreme Lending.

92.    To induce Plaintiff to sign the Hire Paperwork, Defendants made the fraudulent representations identified in Paragraph 36 (the "Representations").

93.     Defendants knew or should have known the Representations were false as set forth in Paragraph 41.

94.     When Defendants made the Representations to Plaintiff, Plaintiff was not in a position to ascertain the truth or falsity of the statements.

95.     If Plaintiff had known or had any reason to believe that the Representations were false, Plaintiff would not have left her former employment, began working with Defendants, or signed the Hire Paperwork.

96.     Plaintiff left gainful employment, began to work with Defendants, and signed the Hire Paperwork under the mistaken belief that Defendants' Representations were true.

97.     Defendants knew or should have known that the Representations were false when made, and Defendants made the Representations to Plaintiff with the intent to deceive and defraud her, to induce her to leave her then-current employment, to induce her to begin working for Defendants, and to induce her to sign the Hire Paperwork.

98.     Rescinding the Hire Paperwork will place the parties in the position they occupied prior the occurrence of the fraud and executing the Hire Paperwork.

99.     Plaintiff has no plain, speedy, and adequate legal remedy that would be as efficient to attain the ends of justice and its prompt administration as a decree for rescission would be.

100.    Rescission of the Hire Paperwork would be fair and equitable and would not be unduly harsh on Supreme Lending.

101.   As a result of Defendants' fraud, Plaintiff has been damaged.

WHEREFORE, Plaintiff requests judgment that the Hire Paperwork between Plaintiff and Supreme Lending be canceled and that Supreme Lending be estopped from demanding return of the sign-on bonus paid to Plaintiff, along with an award of damages to Plaintiff caused by her reliance on Defendants' fraudulent Representations (including lost wages and career opportunities caused by inducing Plaintiff to leave her prior employment), together with prejudgment interest, court costs, any other relief the Court deems just and proper.

## COUNT VII
### (Rescission of Hire Paperwork)

### Against Defendant Supreme Lending

102.   Plaintiff realleges and adopts, as if fully set forth in Count VII, the allegations in paragraphs 1 through 101.

103.   In addition to the facts concerning fraud set forth in Count VI above, numerous other equitable circumstances exist justifying rescission of the Hire Paperwork as set forth below.

104.   The Hire Paperwork contains choice-of-law clause and arbitration clauses setting forth in pertinent part that any litigation between the parties "shall be governed by, construed in accordance with, and interpreted pursuant to the laws of the State of Texas, without giving effect to its choice of law principles. This contract is wholly performable in Dallas County, Texas." The Hire Paperwork additionally sets forth that all claims are subject to arbitration under JAMS rules in Dallas, Texas.

105.   The recitation that the Hire Paperwork "is wholly performable in Dallas County, Texas" is not true and was in fact repudiated by Defendants. Defendants made the Representations which included that she would be able to work remotely from her home in Florida reporting to the Florida branch as a disability accommodation, among other promises concerning marketing resources that would be provided to facilitate Plaintiff's sales performance. Defendants failed to honor those promises and later refused to allow Plaintiff to perform her duties at the Dallas, Texas branch with the accommodations promised, thereby repudiating that the Hire Paperwork could be performed wholly in Dallas, Texas.

106.   The Hire Paperwork provisions concerning arbitration state that "[t]he arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential," which is against public policy and case law in the Eleventh Circuit concerning FLSA claims of the type Plaintiff has raised herein. Courts within this circuit routinely reject confidentiality clauses in the FLSA context "because they thwart Congress's intent to ensure widespread compliance with the FLSA" and generally "contravene FLSA policy and attempt to limit an individual's rights under the First Amendment." *Barrera v. Home Paramount Pest Control Co*., No. 6:20-cv-1639-RBD-GJK, 2021 U.S. Dist. LEXIS 70689, at *10 (M.D. Fla. Apr. 9, 2021), quoting *Housen v. Econosweep & Maint. Servs., Inc.*, No. 3:12-cv-461-J-34TEM, 2013 U.S. Dist. LEXIS 79877, 2013 WL 2455958, at *2 (M.D. Fla. Jun. 6, 2013) *and Pariente v. CLC Resorts and Devs., Inc.*, No. 6:14-cv-615-Orl-37TBS, 2014 U.S. Dist. LEXIS 160342, 2014 WL 6389756, at *5 (M.D. Fla. Oct. 24, 2014) (internal quotations omitted).

Moreover, a JAMS arbitration would require Plaintiff to pay greater fees and costs that than which would be required in court, further undermining the policy of the FLSA and other remedial statutes such as the Private Whistleblower Act, the ADA, Florida's Constitution concerning minimum wages, and the FCRA.

107.   Moreover, Plaintiff—a Florida resident working in Florida—engaged in protected activity under the Florida Private Whistleblower Act concerning fraudulent, deceptive, and unfair trade practices by a Florida branch of Supreme Lending against Florida consumers. Plaintiff was fired within hours of engaging in protected activity of June 22, 2022. This is precisely the type of conduct Florida sought to remedy when it created the Private Whistleblower Act: to protect Florida citizens from violations of law by employers and to protect Florida employees who object to, refuse to participate in, or otherwise "blow the whistle" on such conduct. However, Supreme Lending's Hire Paperwork contains a choice-of-law clause calling for the application of Texas law. Texas has no analog to Florida's Private Whistleblower Act—it only has an act protecting *public* employees who blow the whistle. Allowing Defendants to contract around Florida law in this regard is repugnant to public policy, unconscionable, and plainly inequitable under the circumstances. Common sense dictates that employers should not be able to contract away compliance with laws designed to protect a jurisdiction's employees and citizens from illegal conduct by forcing employees to sign a contract of adhesion containing a choice of law clause for a jurisdiction that has no such legal protections. Such a maneuver has the effect of requiring an individual to prospectively waive unaccrued, future claims. This is void as unconscionable and

against public policy. See *Romano v. Manor Care, Inc.*, 861 So. 2d 59, 62 (Fla. 4th DCA 2003) ("Although parties may agree to arbitrate statutory claims, even ones involving important social policies, arbitration must provide the prospective litigant with an effective way to vindicate his or her statutory cause of action in the arbitral forum. . . . When an arbitration agreement contains provisions which defeat the remedial provisions of the statute, the agreement is not enforceable."), citing Green *Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90, 148 L. Ed. 2d 373, 121 S. Ct. 513 (2000) and *Flyer Printing Co. v. Hill*, 805 So. 2d 829, 831 (Fla. 2d DCA 2001). The Florida Private Whistleblower Act "is a remedial statute which should be liberally construed in favor of granting access to the remedy provided by the Legislature." *Diaz v. Impex of Doral, Inc.*, 7 So. 3d 591, 595 (Fla. 3d DCA 2009), citing *Golf Channel v. Jenkins*, 752 So. 2d 561, 566 (Fla. 2000) and *Bell v. Ga.-Pac. Corp.*, 390 F. Supp. 2d 1182 (M.D. Fla. 2005).

108.    Given the circumstances of Defendants' knowingly false representations to Plaintiff that fraudulently induced her to sign the Hire Paperwork; their failure to pay her any wages for hours that she worked in violation of the Hire Paperwork and state & federal law; the diversion of Plaintiff's leads by Priakos to other employees; Defendants' illegal conduct towards consumers that could create liability for Plaintiff and jeopardize her license; the repudiation of disability accommodations that were promised to her; the termination of Plaintiff after she submitted complaints about law violations; and the attempts to clawback the sign-on bonus through the same attorney who provided legal advice to Plaintiff to induce her to join the company, the

enforcement of the Hire Paperwork between the parties is unconscionable and against public policy.

109.   Rescinding the Hire Paperwork will place the parties in the position they occupied prior the occurrence of wrongful acts by Defendants.

110.   Plaintiff has no plain, speedy, and adequate legal remedy that would be as efficient to attain the ends of justice and its prompt administration as a decree for rescission would be.

111.   Rescission of the Hire Paperwork would be fair and equitable and would not be unduly harsh on Supreme Lending.

WHEREFORE, Plaintiff requests judgment that the Hire Paperwork between Plaintiff and Supreme Lending be canceled, and that Supreme Lending be estopped from demanding return of the sign-on bonus paid to Plaintiff, together with prejudgment interest, court costs, any other relief the Court deems just and proper.

## COUNT VIII
### (Reformation of Hire Paperwork, in the Alternative to Count VII and the Rescission Remedy Sought in Count VI)

### Against Defendant Supreme Lending

112.   Plaintiff realleges and adopts, as if fully set forth in Count VIII, the allegations in paragraphs 1 through 108.

113.   To the extent the Court determines that the remedy of rescission sought in Counts VI and VII is unwarranted, Plaintiff respectfully requests that the Court reform offensive provisions of Hire Paperwork in lieu of rescission. Specifically, for the same reasons Plaintiff seeks rescission, Plaintiff in the alternative seeks a

reformation of the Hire Paperwork that would cancel the arbitration clauses, the choice-of-law clauses, the putative obligation to return the sign-on bonus, and any post-employment covenants restricting Plaintiff's right to work in her profession or solicit customers.

114.   Reforming the Hire Paperwork will place the parties in the position they occupied prior the occurrence of wrongful acts by Defendants.

115.   Plaintiff has no plain, speedy, and adequate legal remedy that would be as efficient to attain the ends of justice and its prompt administration as a decree for reformation would be.

116.   Reformation of the Hire Paperwork would be fair and equitable and would not be unduly harsh on Supreme Lending.

WHEREFORE, Plaintiff requests judgment that the Hire Paperwork between Plaintiff and Supreme Lending be reformed, and that Supreme Lending be estopped from demanding return of the sign-on bonus paid to Plaintiff, together with prejudgment interest, court costs, any other relief the Court deems just and proper.

## COUNTS IX THROUGH XIV
### *(Disability Discrimination, Retaliation, and Failure to Accommodate Claims Pending Agency Review)*

117.   Plaintiff realleges and adopts, as if fully set forth in Count V, the allegations in paragraphs 1 through 57.

118.   Plaintiff intends to bring the following claims against Defendant Supreme Lending concerning the facts common to all claims:

a.      Count IX – Disability Discrimination under the ADA

b.      Count X – Failure to Accommodate under the ADA.

c.      Count XI – Retaliation under the ADA

d.      Count XII – Disability Discrimination under the FCRA

e.      Count XIII – Failure to Accommodate under the FCRA.

f.      Count XIV – Retaliation under the FCRA.

119.   Plaintiff reserves the right to amend this action to raise the afore-described counts after the conclusion of conditions precedent concerning her charge of discrimination dually filed with EEOC and FCHR.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, a demand a trial by jury as to all issues triable as of right.

Dated this 2nd day of August 2022.          Respectfully submitted,

*s/ Brian Calciano*
BRIAN CALCIANO
Florida Bar No. 10887
*Trial Counsel for Plaintiff*

**CALCIANO PIERRO, PLLC**
146 Second Street North – Suite 304
St. Petersburg, Florida 33701
(727) 201-2573
brian@flemploymentlaw.com